## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEVEN A. HARDY,                    :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Civil Action No. 09-0660 (JR)
                                    :
JOHN M. McHUGH, Secretary of the :
Army,                               :
                                    :
          Defendant.                :

## MEMORANDUM

Plaintiff is a retired United States Army Reserve officer.  He sues the Secretary of the Army,[1] alleging, in four counts: violations of the Privacy Act, 5 U.S.C. § 552a, because the Army (1) maintained an inaccurate General Officer Memorandum of Reprimand ("MOR") in his file; and (2) allowed him to suffer adverse determinations based on the inaccurate MOR; and violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, et. seq., because (3) the Army Board for Correction of Military Records ("ABCMR") arbitrarily and capriciously denied his application to correct the inaccurate MOR; and (4) the ABCMR arbitrarily and capriciously failed to recommend him for consideration by a Special Selection Board ("SSB").[2]  Hardy

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), John McHugh is substituted as the defendant in his official capacity.

[2]     Under 10 U.S.C. § 628(b), the Secretary of the Army has discretion to appoint a group of five or more officers to determine whether a non-selected person should be recommended for promotion due to "material unfairness" in the selection process.

requests that this Court order the Army to remove the MOR from
his record, order the Army to determine if he should be
considered for promotion by an SSB, and award him damages,
attorneys' fees, and costs.

### Factual Background

Hardy served in the Army for more than 35 years.  While
on active duty, he also pursued a bachelor's degree at a total of
six different institutions.  AR 78.  One of those institutions
was Hawaii Pacific University, where he took courses from late
1995 to early 1997.  Compl. ¶ 31.  Believing that he had
completed the requirements necessary to qualify for a bachelor's
degree in anthropology, Hardy asked HPU to send his transcript to
the Army for inclusion in his records.  AR 102.  At some point
after he made that request, the degree was listed on Hardy's
official Army records.  Subsequently, the Army selected Hardy to
attend the Army's National Defense University, where he earned a
master's degree.

In fact, Hardy did not have a bachelor's degree from
HPU.  He asserts that he discovered the error only in March
2003, when the Army conducted an informal investigation of him
under Army Regulation 15-6, after his ex-wife made entirely
unrelated allegations about security clearance violations.  AR
50-52.  The Army found those allegations to be baseless, but the
investigation uncovered questions about Hardy's college degree.

While the investigation was on-going, the Army reassigned Hardy from a new post in Colorado Springs to a temporary position in Virginia.  AR 103.  Believing that he would eventually make his way back to Colorado Springs, Hardy left his possessions - including his academic records - behind.  AR 103. When an investigator asked for proof of his HPU degree, Hardy answered that his records were in storage, and instead requested an official transcript from the university.  AR 54, 103.  HPU was slow to respond to his request, but eventually notified him that he had not completed the degree.  AR 7.  The Army emphasizes that, during the investigation, Hardy represented that he had documentation in his stored belongings in Colorado, AR 88, 90-1, but he was never able to produce it.  AR 52.

In his final report, the investigator made the following findings: Hardy (1) did not have a bachelor's degree of science in anthropology from Hawaii Pacific University when he applied for the 2000 USAR Professional Development Education Board (PDE); (2) was reckless, by his own admission, in allowing the entry about his degree to remain on his Officer Record Brief while his application was under consideration by the PDE (even though his conduct was not clearly intentional, it amounted to a negligent misrepresentation to the board); (3) was reckless in allowing the degree entry to remain on the Officer Record Brief he submitted to Colonel Robinson for use by the National Defense

- 3 -

College, with the result that he was awarded a master's degree in error; (4) did not use this ORB for any other competitive board; (5) did not correct the misrepresentation after the Army's investigation (the failure to correct amounting to an intentional misrepresentation); (6) knew he could not substantiate the degree; and (7) would not have been selected for the National War College if it had been known that he did not have a bachelor's degree.  AR 52.

As a result of the 15-6 findings, the Army issued an MOR on August 15, 2003, reprimanding Hardy for repeatedly misrepresenting his educational credentials.  The MOR stated,

> "[Y]ou repeatedly misrepresented your educational credentials for official purposes.  Your misrepresentations resulted in your selection for resident senior service college attendance and caused the National Defense University (NDU) to incorrectly issue a masters degree to you. . . . [Y]ou misrepresented your credentials to secure yourself a highly coveted resident military education opportunity and credential."  AR 60.

Hardy immediately disputed the investigator's findings and the MOR, arguing that his mistake was not intentional and insisting that he did not specifically apply to the NDU, rather he applied to "Any Resident School," some of which did not require a bachelor's degree for admission.  AR 62.  He did acknowledge that he was reckless in failing to correct the error. Id.

In April 2004, the Army referred the case to a Board of Inquiry to determine whether Hardy should be separated from the Army.  AR 71-72.  The BOI determined that Hardy's derelict failure to review the academic credentials in his file resulted in a "negligent misrepresentation" of his educational level.  The BOI found that this conduct demonstrated poor judgment in "not aggressively pursuing confirmation of the academic entries contained in his ORB," but that it was not misconduct requiring separation from the Army.  AR 83.

After the BOI decision, the MOR remained in Hardy's file.  Hardy was not selected for promotion to the rank of colonel in 2004, 2005 and 2006.  AR 67-69.  After he was notified of his 2004 non-selection, he requested that the Department of the Army Suitability Evaluation Board ("DASEB") transfer his MOR to the restricted part of his file.  The DASEB denied Hardy's initial request, but in November 2007, after two more non-selections, the DASEB granted Hardy's request to transfer the MOR to the restricted part of his file.  AR 142.

On December 31, 2007, Hardy was released from active duty and transferred to the United States Army Reserve Control Group.  AR 9.

In January 2008, Hardy filed an application with the ABCMR, requesting that the MOR be voided, that he be considered for promotion to colonel by a SSB, and that he receive additional

pay, back pay and credit for service.  AR 13-40.  The ABCMR denied his application, finding that the MOR was neither factually incorrect nor inaccurate.  The ABCMR reasoned that, even though the 15-6 investigation and the BOI had both found it unclear whether Hardy had acted intentionally, their findings of "negligent misrepresentation" were consistent with the MOR.  AR 1-11.

## Legal Standards

Hardy brings this case under two statutes - the Privacy Act and the APA.  The Privacy Act requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5).  A civil action is available to correct an inaccurate record that the agency has refused to amend, 5 U.S.C. § 552a(d)(1)-(3), and to individuals who suffer an adverse determination caused by an inaccurate record, 5 U.S.C. § 552a(g)(1)(C).

Under the APA, the court can set aside Corrections Board decisions that are "arbitrary, capricious or not based on substantial evidence."  See, e.g., Chappell v. Wallace, 462 U.S. 296, 303 (1983).  "When reviewing a decision by a military Correction Board, a Court must do so under an 'unusually

deferential application of the arbitrary and capricious standard of the APA.'" Lebrun v. England, 212 F. Supp. 2d 5, 14 (D.D.C. 2002).  That "unusually deferential" standard means that a Corrections Board need only provide a "rational connection" between the facts and the ultimate decision.  See, e.g., Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997).

The Army argues that it did not violate the Privacy Act because the MOR was factually accurate, because the BOI findings did not undermine the MOR, and because, even if the MOR was factually inaccurate, it did not cause the adverse action against Hardy.  As for the APA claims, the Army argues that the ABCMR is entitled to additional deference from the Court where, as it did in this case, the Board provided a rational explanation for its decision.  Finally, the Army argues it would be improper for this Court to award damages because the Army did not act willfully or intentionally.  [Dkt. #6].  Hardy cross-moves for summary judgment on Counts 1, 3 and 4, arguing that the BOI findings discredited the factual assertions relied upon in the MOR and that the ABCMR ignored the BOI findings.  As for Count 2, he argues that a genuine issue of material fact exists as to whether the MOR was the proximate cause of the adverse action.  [Dkt. #9].

## Analysis

For Hardy's Privacy Act claims, the question is whether the Army's judgment and decision to reprimand him rendered his official file "inaccurate."  As one might expect, the Privacy Act does not authorize a court to substitute its own judgment for an agency's.  However, a court may correct an agency's judgment or opinion that is based upon clearly erroneous facts.  <u>See</u>, <u>R.R. v. Dep't of the Army</u>, 482 F. Supp. 770, 774 (D.D.C. 1980).

The "judgment" that Hardy focuses on is the MOR's implication that he intentionally misrepresented his educational credentials to gain admission into the NDU.  Hardy argues that this conclusion is clearly erroneous because it has been discredited by the BOI findings.  There are several problems with this argument.  First, the sentence highlighted by Hardy - "you misrepresented your credentials to secure yourself a highly coveted resident military education opportunity and credential" - can be read to imply a conclusion about intent, but it is hardly the thrust of the MOR.  Rather, the MOR focuses on the causal relationship between Hardy's misrepresentation and his erroneous admission into NDU and receipt of a master's degree.  AR 60. Second, the MOR is based on the same set of facts, and comes to essentially the same conclusion, as all of the other documentation in this case: the 15-6 investigation, the BOI findings, and Hardy's own rebuttal letter.  AR 52, 60, 62-3, 83.

Finally, even if the MOR were somehow inconsistent with the BOI findings, Hardy has no authority for the proposition that the Army is obligated to reconcile its conclusions, and it is not clear that either would outweigh the other.[3]  That the BOI decided to retain Hardy is irrelevant, because the MOR did not address that issue at all.

Hardy presents the same facts that have been considered by various Army boards and asks me to substitute my judgment for theirs.  I may indeed believe that it is too harsh to reprimand a lieutenant colonel for something that may have been prompted by an administrative error, or I may find it difficult to believe that an army officer could mistakenly believe that he graduated from college when he was actually a few credits shy of doing so, but my belief is of no consequence when the Army's judgment is based on accurate facts.

Hardy's APA claim is easily disposed of.  The ABCMR provided essentially the same explanation as I just did in its denial of Hardy's application, and it is neither arbitrary nor

---

[3]    Hardy argues that the BOI procedure is a "formal" process, and therefore, is more thorough.  Because I find that the BOI findings are consistent with the MOR, there is no need to address which investigation would likely come to the more accurate result.

capricious.  Nor did the ABCMR ignore the BOI findings: in its final decision, the ABCMR specifically addresses them.  AR 8, 10.

*     *     *

An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge